**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HEATHER GAMBLE, a minor, by her
parents and next friends; RON
GAMBLE; ARLENE GAMBLE,
<u>Plaintiffs-Appellants,</u>

v.                                                                                          No. 95-2247

MARYLAND STATE DEPARTMENT OF
EDUCATION; NANCY S. GRASMICK,
(Officially) Superintendent,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-93-1347-PJM)

Argued: May 8, 1996

Decided: July 22, 1996

Before MURNAGHAN, NIEMEYER, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Francisco Lopez, Jr., BOGIN & EIG, P.C., Washington,
D.C., for Appellant. Jo Ann Grozuczak Goedert, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Baltimore,

Maryland, for Appellee. **ON BRIEF:** Michael J. Eig, Matthew B. Bogin, BOGIN & EIG, P.C., Washington, D.C., for Appellant. J. Joseph Curran, Jr., Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Heather Gamble, a handicapped minor, brought this action by her parents, Ron and Arlene Gamble, under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et . seq. ("IDEA"), to recover attorneys fees and costs incurred in pursuing educational funding.

Heather Gamble, a 15-year old with a serious emotional disturbance, is disabled as defined by the IDEA. She has received special education services since the fourth grade and was placed in the Regional Institute for Children and Adolescents ("RICA") when she was eleven.

On June 9, 1992, members of the Montgomery County Public Schools' Admission, Review and Dismissal Committee held a team meeting to review Heather's educational program at which Heather's parents indicated that they felt unable to continue to care for Heather on her weekend visits. The team agreed to help identify additional resources for Heather and to refer the matter to the Montgomery County Local Coordinating Council ("LCC") for funding.[1]

_____

[1] As part of its implementation of the IDEA, Maryland has established Local and State Coordinating Councils to oversee funding of services for disabled children who require residential placements. Md. Ann. Code art. 49D, §§ 13-19 (1994).

2

On August 20, 1992, Dr. Joan Donahue, Heather's primary therapist at RICA, completed an individual treatment plan for Heather and recommended that Heather be placed in a therapeutic foster home on weekends. The Montgomery County LCC met on September 9, accepted Dr. Donahue's recommendation, and, because funding for such services is not available through established programs, authorized her to prepare an application for a "flexible funding" grant which it then submitted to the Governor's Office of Children, Youth and Families' State Coordinating Council ("SCC").

In early December 1992, Dr. Donahue received a copy of a letter from the SCC that indicated her "flexible funding" application had been turned down because it did not assert, as required, that Heather was "at risk of an out-of-state placement." In attempting to gather the information necessary to resubmit the application, Dr. Donahue realized that the Montgomery County LCC would have to meet to establish that Heather was at risk of out-of-state placement. At its February 3 meeting, the LCC discussed the matter and documented the risk in its minutes, and Dr. Donahue then incorporated those minutes into her revised application which was submitted to the SCC on February 9, 1993.

The Gambles, too, received a copy of the SCC letter turning down the "flexible funding" application. On receipt of the letter, they retained counsel, and on January 25, 1993, requested an administrative hearing to review the SCC's decision to deny Heather's application. The hearing was scheduled for Friday, February 19.

Reviewing Heather's revised application in early February 1993, SCC member Richard Gamble[2] determined that it appeared to meet the SCC's funding criteria and would most likely be approved at the SCC's February 23 session. He telephoned Gambles' counsel to dis-

_____

[2] Richard Gamble (no relation to the plaintiffs) serves as the chief of the Maryland State Department of Education's Non-public Schools Branch of the Division of Special Education. His responsibilities at MSDE include coordination of MSDE's special education administrative hearing process. In addition, he is the MSDE's representative to the SCC and in that capacity, routinely conducts a preliminary evaluation of "flexible funding" applications.

cuss the matter with him, and subsequently sent Gambles' counsel a letter in which he wrote,

> Based on my initial review of the materials, it appears that [Heather's application] is approvable. However, the full committee will not be in session until Tuesday, February 23, 1993 at which time a final decision will be rendered. Based upon our conversation of February 17, 1993 I trust that this will alleviate the need for the hearing which is scheduled Friday, February 19, 1993. If you are in agreement, please advise Laurie Bennett, Esquire and request a postponement.

The Gambles subsequently withdrew their request for a hearing, and the SCC approved Heather's revised application at its February 23 meeting.

Thereafter, the Gambles requested that the MSDE reimburse them for their attorneys fees incurred in pursuing the hearing. When their request was refused, the Gambles brought this action against the MSDE and Nancy Grasmick in her official capacity as Superintendent of the MSDE to recover $6,119.12 in attorneys fees and costs, alleging that they qualified as a prevailing party under the IDEA's fee provision, 20 U.S.C. § 1415(e)(4)(B). The parties filed cross-motions for summary judgment, and the district court entered judgment in favor of the defendants on the ground that the Gambles were not prevailing parties within the meaning of the IDEA. This appeal followed.

Section 1415(e)(4)(B) of Title 20 permits a district court "in its discretion" to "award reasonable attorneys' fees . . . to the parents or guardian of a child or youth with a disability who is the prevailing party" in "any action or proceeding brought under this subsection." (Emphasis added). The term "`prevailing party' connotes the same general meaning under § 1415(e)(4)(B) and 42 U.S.C. § 1988," Combs v. School Bd. of Rockingham County, 15 F.3d 357, 360 (4th Cir. 1994), and permits plaintiffs to recover attorneys fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). In order to be a prevailing party under § 1988, a plaintiff "must obtain an enforceable judgment against the

4

defendant from whom fees are sought, or comparable relief through a consent decree or settlement." Farrar v. Hobby, 506 U.S. 103, 111 (1992). Accord S-1 v. Board of Educ. of North Carolina, 21 F.3d 49, 51 (4th Cir.) (en banc) (per curiam) (holding that post-judgment changes in defendants' conduct will not create prevailing party status under § 1988 unless formalized by "an enforceable judgment, consent decree, or settlement"), cert. denied , 115 S.Ct. 205 (1994).

The Gambles argue that Richard Gamble's letter "must be viewed objectively as an offer to approve the [requested] services at the February 23, 1993, SCC meeting if the hearing was postponed." The Gambles assert that their subsequent reliance --"giving up their right to a timely hearing" -- constituted acceptance of and consideration for Richard Gamble's offer and consequently created a settlement agreement between the Gambles and the SCC. We disagree.

Even when read in the light most favorable to the plaintiffs, Richard Gamble's letter does not promise that the SCC would approve Heather's application if the Gambles postponed their hearing and is therefore not an offer of settlement. Rather, Richard Gamble merely indicated that based on his "initial review," it "appear[ed]" that Heather's application was "approvable," but added that a "final decision" could not be rendered until "the full committee" met on February 23. (Emphasis added). Moreover, Richard Gamble did not seek to have the Gambles withdraw their request for a hearing, but rather indicated only that they might wish to "postpone[ ]" the hearing in light of the scheduled SCC meeting.

Unconstrained by any obligation to Richard Gamble or the SCC, the Gambles withdrew their request for a hearing, apparently satisfied with Richard Gamble's observations regarding the likely resolution of Heather's application. The Gambles' withdrawal of their hearing request was voluntary and unilateral and cannot now be reconstructed as acceptance of or consideration for Richard Gamble's alleged settlement offer.

In the absence of a settlement agreement, we need not reach the issue of Richard Gamble's authority to enter into such an agreement

5

on behalf of the SCC. Accordingly, the judgment of the district court is

<u>AFFIRMED</u>.

6